UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL MARR, | Case No. 1:07-cv-908 |
| Plaintiff, | Chief Judge Paul L. Maloney |
| v. | Magistrate Judge Carmody |
| KARL FOY, | |
| Defendant. | |

**Opinion and Order**
*" Marr 5 "*

**Continuing to Take the January 4, 2010 R&R and
Plaintiff's Objections under Advisement; Allowing the Plaintiff to Reassemble Files and
File a Brief in Opposition to Summary Judgment**

Plaintiff Michael Marr ("Marr") is incarcerated at a state correctional facility in Muskegon, Michigan, and defendant Karl Foy is employed as Classification Director and Transportation Coordinator at the maximum-security state correctional facility in Ionia, Michigan ("ICF"), where Marr was formerly incarcerated. *See* Amended Complaint filed August 2008 ("Am Comp") ¶¶ 1-2. In September 2007, Marr brought this action under 42 U.S.C. § 1983, claiming that Foy violated his First Amendment rights beginning in September 2006. Comp ¶¶ 3-5. With extensions of time, Foy moved for summary judgment in February 2008, and Marr filed an opposition brief in May 2008. In August 2008, this court granted Marr's motion for leave to amend his complaint, accepted the amended complaint for filing, *see* Doc. No. 34, and denied as moot Foy's motion for summary judgment on the original complaint. In October 2008, Foy filed an answer to the amended complaint,

*see* Doc. No. 41, and the Magistrate Judge granted Foy leave to take Marr's deposition in prison, *see* Doc. No. 47.

Marr's first amended complaint retains the First Amendment claim, but now also invokes the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*, and the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. Am Comp ¶¶ 3-7.

Specifically, Marr alleges that during a classification interview in the presence of two other prisoners, Foy informed him that ICF was not designated as a Level II "kosher" facility under OP-05.03.150A Attachment A, and that ICF would not provide a separate room exclusively for preparation of kosher food. Am Comp ¶¶ 5-6. Marr further alleges that Foy berated him in front of the other prisoners for twenty minutes, stating that prisoners do not have any rights and that federal judges should not kow-tow to prisoners by giving them perks like kosher meals, and making anti-Jewish comments. Am Comp ¶¶ 7-8.

Next, Marr alleges that in retaliation for exercising his First Amendment rights, Foy assigned him to the position of "midnight porter", even though Marr explained that he did not have the certification needed for that position and that working at such hours would cause him to sleep during the day (when he needed to research his case and attend religious study and worship sessions). Am Comp ¶¶ 9-11. Marr began working in the new position on September 13, 2006, causing him to miss morning "sacred meal offerings" and preventing him from conducting research in support of a direct criminal appeal (which he wanted to pursue prior to filing a habeas corpus petition). Am Comp ¶¶ 12 and 14. In November 2006, Marr's supervisor recommended that he be assigned to another job because he was incompetent at the assigned job. Foy denied the request, directed Marr to improve his performance, and responded with belittlement when Marr wrote a letter regarding the issue. Am Comp ¶¶ 15-18.

Marr alleges that he pursued a grievance unsuccessfully, Am Comp ¶ 19, and that Foy denied his supervisor's renewed request to assign Marr to a different job, instead instructing prison staff to teach Marr the needed skills. Am Comp ¶¶ 20-21. Marr alleges that he wrote a letter in January 2007 which Foy ignored, and that he again unsuccessfully pursued a grievance. Am Comp ¶¶ 22-23. Also in January 2007, Marr was transferred from Ionia to Muskegon, and he alleges that his custodial supervisor told him that the transfer was intended to separate him and defendant Foy. Am Comp ¶¶ 24-25.

Marr expresses concern that the two negative work reports from ICF, which he characterizes as retaliatory, may adversely affect parole determinations and any possible re-sentencing by the state trial court. Am Comp ¶ 26.

Marr's first amended complaint asserts claims for:

- Count One, retaliation for the exercise of First Amendment rights, Am Comp ¶ 9;

- Count Two, intentionally substantially burdening the free exercise of his religion, in violation of the First Amendment, RLUIPA, and 42 U.S.C. § 1983, Am Comp ¶ 10;

- Count Three, intentionally hindering his right of access to the courts, causing him to miss the deadline for filing a post-conviction motion in Michigan state court pursuant to MICH. COMP. LAWS § 6.500, Am Comp ¶ 11;

- Counts 4 & 5, violating federal and state constitutional oaths, Am Comp ¶¶ 11-12.

Marr's amended complaint sues Foy in his individual capacity only, *see* Am Comp ¶ 2. On each of the five counts, Marr seeks $20,000 in general damages, $10,000 in compensatory damages and $5,000 in punitive damages. He also seeks a declaration that Foy violated his rights while acting under color of state law – though he sues Foy only in his individual capacity – an award of costs and interest, and a trial by jury. Am Comp, Prayer for Relief.

In October 2007, the Magistrate granted Marr's motion for leave to proceed *in forma pauperis*

("IFP") in this matter. Marr was charged an initial partial filing fee of $4.81, but the court permitted him to proceed without payment thereof because he lacked sufficient funds to pay, directing him to pay when funds became available. Funds were not promptly debited from Marr's prison account to pay the $4.81 initial partial filing fee. Marr appealed, contending that the Magistrate's October 2007 IFP order and federal law obligated the prison to debit his account to pay the initial partial filing fee, no matter how low that causes the balance in Marr's prison account to go. **In October 2008, this court agreed with Marr and reversed the Magistrate's decision regarding debiting of his prison account to pay the initial partial filing fee.** *See Marr v. Foy*, No. 1:2007-cv-908, 2008 WL 6716272 (W.D. Mich. Oct. 29, 2008) (Maloney, C.J.) **("*Marr1* ").**

On October 22, 2008, the Magistrate ordered that Marr submit to deposition. On November 13, 2008, Marr moved for the appointment of counsel to represent him at the deposition, alleging that he is suffering "severe depression" which impairs his cognitive abilities and will prevent him from proceeding ably against experienced state-government attorneys. The Magistrate denied Marr's motion for appointment of counsel on November 17, 2008, and Marr timely "objected" on November 28, 2008. The court construed Marr's objections as an appeal. *See Fitts v. Sicker*, 232 F. App'x 436, 443 (6th Cir. 2007) ("Magistrate Judge Greeley held he could not order the MDOC to provide an address they did not possess. Accordingly, Fitts' motion to re-serve the complaint was denied. *Fitts filed objections to this order, which Judge McKeague construed as an appeal.*") (emphasis added), *cert. denied*, – U.S. –, 128 S.Ct. 891 (2008). **In December 2008, this court affirmed the Magistrate Judge's ruling denying Marr's motion for appointment of counsel,** *see Marr v. Foy*, No. 1:2007-cv-908 Doc. No. 56, 2008 WL 5111849 (W.D. Mich. Dec. 3, 2008) (Maloney, C.J.) **("*Marr 2*").**

**Finally, on September 28, 2009, defendant Foy filed a motion for summary judgment,** *see*

**Docs. 79 and 80.** The Magistrate Judge granted Marr's October 7, 2009 motion for an extension of time, giving Marr until *December* 28, 2009 to file a brief opposing summary judgment, *see* Doc. 82.[1] Nonetheless, Marr failed to file any response to the summary-judgment motion by that date, nor did he seek a further extension of time in which to do so. Marr first attempted to raise argument in opposition to summary judgment in the form of "objections" to the R&R – along with an affidavit addressing each of his three claims – all filed several *weeks* after his response on summary judgment was due, and crucially, *after* the Magistrate Judge examined the issues and issued her Report. This court noted that Marr's purported objections were inappropriate at that late juncture, and could be rejected on that basis alone. *See Marr v. Foy*, **No. 1:2007-cv-908, 2010 WL 489535, *6 (W.D. Mich. Feb. 4, 2010) (Maloney, C.J.) ("*Marr 4*")**. However, the court concluded by stating as follows:

> the court would benefit from a fuller record in determining the true state of affairs regarding Marr's allegedly lost or stolen case file. Specifically, the court should know whether the case file was truly unavailable to Marr for an extended period of time through no fault of his own, when it became unavailable, what was done to it and by whom, where was it stored or left or sent, the reasons if any why prison officials did not return the file to Marr (if applicable), and what efforts Marr made to ascertain the whereabouts of his file and have it returned[.] Such facts could bear on the propriety of considering the R&R as it stands, prepared by the Magistrate Judge without the benefit of an opposition brief from Marr, or, alternatively, allowing Marr to obtain a complete case file and file a brief in opposition to summary judgment (in which case the Magistrate Judge could prepare a revised R&R).

*Marr 4*, **2010 WL 489535 at *7**. Accordingly, the court ordered as follows: "No later than Friday, March 5, 2010, the defendant **SHALL** investigate and report as to the whereabouts of plaintiff's legal

---

[1] On October 22, 2009, the Magistrate Judge partially granted Marr's motion to compel discovery, directing defendant Foy to respond to one additional item in Marr's July 9, 2009 First Set of Interrogatories, but holding that Marr waived his objection to Foy's untimely response to the First Request for Production of Documents by failing to timely object. *See* Doc. 83. Foy filed a certificate of service on November 5, 2009, stating that he had mailed the required additional interrogatory response to Foy as directed. *See* Doc. 87.

papers; when and where the papers were stored, moved, shipped, or left, and by whom; and the reasons, if any, why the legal papers were not returned to Marr." *Id.*

**On March 5, 2010, the defendant filed a response explaining as follows, in its entirety:**

On October 7, 2009, the plaintiff was scheduled to be transferred from the Muskegon Correctional Facility (MCF) to the Newbury Correctional Facility (NCF) with a four-night layover at the Kinross Correctional Facility (KCF). (Affidavit of [Kinross Correctional Facility Administrative Assistant] Michael Sibbald [executed March 5, 2010], ¶ 3, attached as Exhibit A.) On October 8, 2009, the plaintiff was transferred to KCF as planned. However, some background information is necessary before discussing the transfers.

On September 20, 2009, the plaintiff was moved from general population to administrative segregation. (Affidavit of [Muskegon Correctional Facility Transportation Room Officer] Pat McBride, ¶ 4, attached as Exhibit B). [footnote: The affidavit mistakenly states September 9.] Pursuant to this move, the plaintiff's property was taken away and placed in storage. (Exhibit B, ¶¶ 4, 5).

On September 29, 2009, per the plaintiff's request, he was permitted to retrieve legal papers from storage and have them in his cell with him. (Exhibit B, ¶ 6). Defense counsel was able to speak with the plaintiff on the phone while investigating this matter for the Court, and the plaintiff stated that these in-cell papers are what he was missing.

When the plaintiff was transferred from MCF to KCF on October 8, 2009, his property was packed up and sent out. Property is sent separately from the prisoners; they do not travel together. (Exhibit A, ¶ 8). The Property Transferred slip from MCF to KCF/NCF via LRF does not list a "plastic bag" of legal papers. (Exhibit A, ¶ 4). When the plaintiff arrived at KCF, his status was "visitor," and his property was not unpacked. (Exhibit A, ¶ 5). KCF shipped to NCF the same property that had arrived from MCF. **One of the plaintiff's footlockers was noted to be damaged**. (Exhibit A, ¶ 5).

[footnote 2] Although the prison staff did not mention this, defense counsel wonders if the missing property could have fallen through the open bottom of the damaged footlocker and remained in the property-transportation room [at Muskegon] for some time before being sent to KCF.

The plaintiff received his property at MCF on October 16, 2009. (Affidavit of [Newberry Correctional Facility corrections officer] Sergeant Parker, ¶ 3, attached as Exhibit C). However, on November 2, 2009, the plaintiff filed a grievance stating that he was missing a plastic bag of property that he'd had in segregation with him at MCF. (Exhibit C, ¶ 4). Sergeant Parker at NCF investigated the grievance. (Exhibit C, ¶ 5).

-6-

On November 23, 2009, the missing bag of property arrived at NCF from KCF. (Exhibit C, ¶ 5). **The plaintiff received the plastic bag of legal papers on November 24, 2009, and he signed off on his grievance on that date, indicating that the matter was resolved.** (Exhibit C, ¶ 5). **However, on the [February 2010] phone call between defense counsel and the plaintiff, the plaintiff stated that he is still missing some papers.**

At KCF, staff are unsure where the bag came from and when. Since it was not listed on the property Transferred slip from MCF to KCF, either (1) MCF did not send it when the plaintiff was transferred, or (2) if MCF did send it, then the Transportation Officers from MCF took the bag to another prison, not knowing that it should have been unloaded and left at KCF; since no plastic bag was listed on the plaintiff's Transferred Property slip, then even if there was a plastic bag sent from MCF, the Transportation Officers would not have known to leave it at KCF. (Exhibit A, ¶¶ 8, 9).

Doc 104 at 1-3 (boldface added, some paragraph breaks added). The defendant has filed MDOC records, which the affiants state were kept in the regular course of business, to substantiate each allegation as to the nature of the property transferred to each of Marr's facilities as described above, and the time of such transfers. *See* Doc 104, Ex A, Attachments.

While the court cannot conclude that Marr is actually still missing some of his legal documents, it will accommodate him out of fairness and an abundance of caution. The court will afford Marr three months and one week from the date of this order – which presumably will be approximately three months after he receives this order by regular first-class U.S. mail – to obtain any and all documents from his state-court proceedings which he believes he needs in order to effectively oppose summary judgment. Thereafter, the Magistrate Judge can issue a revised R&R, and the parties will have a new period in which to file objections in which they so choose.

## **ORDER**

No later than Friday, June 18, 2010, the plaintiff **MAY FILE** a brief in opposition to the

defendant's motion for summary judgment. Further extensions will **NOT** be granted.

If the plaintiff files an opposition brief, the defendant **MAY FILE** a reply brief within the time allowed by this District's Local Civil Rules, and the Magistrate Judge will prepare a revised R&R.

If the plaintiff does not file an opposition brief by the aforementioned deadline, the court will address the original R&R (Doc 93) and Marr's existing objections thereto (Docs 97-100).

This is not a final and immediately-appealable order.

**IT IS SO ORDERED this 11th day of March 2010.**

        /s/Paul L. Maloney
        Honorable Paul L. Maloney
        Chief United States District Judge